IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| JAMES CLINTON ROLLINGS, | ) | CASE NO. 04-31511-H3-7 |
| | ) | |
| Debtor | ) | |
| | ) | |
| | ) | |
| R.I. COLLECTIONS, LLC, | ) | ADVERSARY NO. 04-3718 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| JAMES CLINTON ROLLINGS, | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

MEMORANDUM OPINION

The Court held a trial on the Complaint To Determine Dischargeability and Objection to Discharge (Docket No. 1) filed by R.I. Collections, LLC, f/k/a Rex-Tech International, LLC. After consideration of the pleadings, evidence, testimony, argument of counsel, and the oral motion of James Clinton Rollings for Judgment as a matter of law, pursuant to Bankruptcy Rule 7052(c), the court made oral findings of fact and conclusions of law. The court granted Judgment in favor of James Clinton Rollings, Defendant, and denied Plaintiffs' complaint. The court here supplements its findings of fact and conclusions of law. To the extent that any findings of fact are deemed to be conclusions of law, they are

hereby adopted as such. To the extent that any conclusions of law are deemed to be findings of fact, they are hereby adopted as such.

Findings of Fact

1. Plaintiff, R.I. Collections, LLC, formerly known as Rex-Tech International, LLC (collectively referred to as "Rex-Tech"), pursuant to 11 U.S.C. § 523, seeks to have this court determine as nondischargeable an unliquidated claim against James Rollings ("Debtor") which is part of Plaintiff's allegations in a pending state court case. Plaintiff further objects to Debtor's obtaining a discharge under 11 U.S.C. § 727.

2. Plaintiff alleges that the debt is nondischargeable pursuant to § 523(a)(2)(A) based on false representations of the debtor, § 523(a)(4) based upon fraud or defalcation while acting in a fiduciary capacity, or embezzlement, and § 523(a)(6) based on willful and malicious injury by the debtor to another entity or to the property of another entity. Complaint, Docket No. 1.

3. Plaintiff also alleges that Debtor should be denied a discharge under 11 U.S.C. § 727 (a)(2) - that debtor, with an intent to hinder, delay or defraud his creditors, has transferred, removed, mutilated, or concealed, or permitted any similar action by another with respect to property of the estate or property of the debtor within the one year prior to the filing of the petition or property of the estate after the filing of the petition; § 727(a)(3) - concealed, destroyed, mutilated, falsified or failed to

keep or preserve any books and records from which his financial condition might be ascertained; § 727(a)(4)(D) - knowingly and fraudulently withholding books and records relating to the debtor's property or financial affairs from an officer of the estate entitled to possession of them; § 727(a)(5) - failure of the debtor to explain satisfactorily any loss of assets or deficiency of assets of the estate; and § 727(a)(6) - refusal of the debtor to obey any lawful order of the court.  Complaint, Docket No. 1.

     4.    Debtor filed a voluntary Chapter 13 proceeding on January 31, 2004.  The case was converted to Chapter 7 on June 14, 2004 and W. Steve Smith was appointed as the Chapter 7 Trustee.  Main Case Number 04-31511-H3-7.

     5.    Rex-Tech International, LLC was formed in December, 1998.  It is and from its inception has been owned 70% by James E. Petersen, Jr. ("Petersen") and 30% by Leonard Timothy Rexroad ("Rexroad") using funding by James E. Petersen, Sr.  Rexroad was the president and chief operating officer of Rex-Tech.

     6.    Rex-Tech possessed an API certification which allows it to perform equipment repair and refurbishment at the upper end of the oilfield market.  API certification-required work comprised approximately 85% of Tex-Tech's business.

     7.    Debtor was hired to work for Rex-Tech by Rexroad and began as a mechanic, on a contract basis, about June or August 1999.  Debtor became a permanent employee about October, 1999 as

the shop supervisor. Thereafter, Debtor served as the plant manager for Rex-Tech for about three years. In mid-2002, Debtor became the quality control manager. Initially, Debtor reported directly to Rexroad but then reported to Jack Franklin, the general manager of Rex-Tech. Franklin reported to Rexroad.

8. In mid-2003, Petersen, Sr. advised Rex-Tech by letter of his intention to call the promissory note which provided the funding for the establishment of Rex-Tech. Sometime in June 2003, Rexroad's employment with Rex-Tech was terminated. RexTech terminated Debtor in August 2003. In late 2003 Rex-Tech shut down and its assets were foreclosed upon by another Petersen company, Riva Services, LLC, which held its debt. On March 25, 2004, Riva Services retroactively assigned its causes of action to RI Collections, LLC effective October 22, 2003.

9. Around May 17, 2001, Debtor, Tim Rexroad and his wife, Kimberly Rexroad, formed a limited liability company, Quality American Rig Parts, LLC ("QARP"). PowerTuff Rig Parts, LLC ("PowerTuff Rig) was formed in September 2001 as an equal venture between PowerTuff Corporation and QARP, each owning a 50% interest in PowerTuff Rig. In 2002, Franklin obtained a 10% interest in PowerTuff Rig. PowerTuff Rig was in the business of purchasing and selling smaller pieces of used equipment for parts and refurbishment to Rex-Tech and others.

10. QARP sold its interest in PowerTuff Rig to PowerTuff Corporation in June 2003 in exchange for a $140,000 promissory note. Currently, PowerTuff Corporation owns 100% of PowerTuff Rig. PowerTuff Corporation is owned by Dave Drummond.

11. On September 10, 2002, Jack Franklin, the manager of Rex-Tech, signed an approved vendor list for Rex-Tech, which included PowerTuff Rig and other Petersen companies, Gulf Electroquip and Riva Services.

12. In late 2003, after being dismissed from Rex-Tech, Debtor formed J-Tech, LLC with Debtor as the sole shareholder. J-Tech is in the business of repair and refurbishment of large pieces of mechanically complex oilfield equipment. Its primary asset is the personal labor, expertise, and reputation of Debtor. J-Tech does not have API certification and does not compete in the same market as Rex-Tech.

13. After filing Chapter 13 Debtor attended his Chapter 13 creditors' meeting on March 25, 2004. After Debtor's main case bankruptcy proceeding was converted to a Chapter 7, Debtor attended his Chapter 7 creditors' meeting on July 22, 2004. Debtor also appeared for a Rule 2004 examination on September 8, 2004 and at the continued examinations on September 21, 2004 and October 15, 2004.

14. Debtor did not complete high school; he began work in the oilfield business as a mechanic. He worked for 21 years at

oilfield equipment companies prior to his employment with Rex-Tech. Debtor's knowledge of the industry, his mechanical skills and reputation allowed him to conduct business in the industry on a "handshake" basis. Testimony of Debtor.

15. Debtor was not involved in major purchasing decisions or the selection of vendors for Rex-Tech. Early in 2001, Rexroad offered Debtor an approximate one third interest in the QARP venture Rexroad was forming, in exchange for his labor and expertise in valuing and assessing the equipment that Rexroad located. Debtor made no monetary contributions for his interest in QARP.

16. Debtor testified that, to the best of his knowledge, no business was ever done by QARP and no profit distributions were ever made. Debtor was never paid anything by either QARP or PowerTuff Rig.

17. Rex-Tech alleges that Debtor and Rexroad did not disclose the formation of QARP and its ownership interest in PowerTuff Rig and that they engaged in a fraudulent scheme to sell used rig parts to Rex-Tech at inflated prices. Rex-Tech contends that this failure to disclose was a breach of fiduciary duty. Further, Rex-Tech contends that Debtor was a partner of Rexroad and accepted money from Rexroad to purchase the equipment and resell it to Rex-Tech. This issue and others are the subject of state court litigation pending in the 55th District Court of Harris County,

Texas.[1] In addition, Rex-Tech alleges that Debtor withheld assets, records, and information from the Chapter 7 Trustee and that he failed to account for the dissipation of assets of the bankruptcy estate.

18. A prerequisite to bringing a cause of action contesting the discharge of a debtor or the dischargeability of a debt under the Bankruptcy Code is the existence of a creditor and debtor relationship between the parties. Sections 727 and 523 state that a "creditor" can object to discharge or to the dischargeability of a particular debt. This term is defined in the Bankruptcy Code under section 101(10), and means an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." A "claim" under section 101(5) means a right to payment or a right to an equitable remedy for breach of performance if such breach gives rise to a

---

[1] Debtor is a third-party defendant in litigation pending in the 55th Judicial District Court of Harris County, Texas in Cause No. 2003-38112, styled "Powertuff Corporation and Powertuff Rig Parts, L.L.C. v. Rex-Tech International, L.L.C. v. Leonard Timothy Rexroad, Individually, Kimberly A. Yeargan a/k/a Kimberly A. Rexroad, Individually, Quality American Rig Parts, L.L.C., David M. Drummond, Individually, James C. Rollings a/k/a Jake Rollings, Individually, and Downhole Pipe & Equipment, Inc., and J-Tech International, L.L.C. v. Riva Services, L.L.C., RI Collections, L.L.C. and James E. Petersen, Jr., Individually" ("State Court Litigation").

right to payment.[2] It must involve a liability of the debtor.

19. In order to have standing to bring this adversary proceeding, Rex-Tech must prove that it has a "claim" or a "right to payment" from Debtor. Rex-Tech asserts that it has a claim based upon a pending state court suit against the Debtor.[3] An assertion of a claim or the assertion of a right to payment is not sufficient to establish that a claim exists.

20. Rex-Tech alleges that Debtor conspired with and participated in a scheme with Rexroad to defraud Rex-Tech. In addition to claiming Debtor's own conduct was fraudulent, Rex-Tech claims that Debtor and Rexroad were partners and that Debtor is vicariously liable for any fraud which may have been committed by Rexroad.

21. The court finds that Debtor has limited formal education and began in the oilfield business as a mechanic. It

---

[2]In this title- ...
   (5) "claim" means-
      (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or

      (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured.

appears he has developed his mechanical skills over his long career in the industry.  Debtor has, for many years, done business in this industry on a "handshake" basis.  He lacks business sophistication and lacks a basic understanding of accounting practices.

22.  It appears that no one kept adequate or accurate financial records at Rex-Tech.  There was no testimony by an accountant on this subject.  The lack of concern or the lack of attention to the maintenance of detailed and accurate records may be attributable to the rig parts industry in general, or, at a minimum, to the dealings between Petersen, Sr. (now deceased) and Tim Rexroad.

23.  The evidence also reflects that the physical practices in the industry were slack and not subject to precise or exact methods.  These pieces of oilfield equipment are big and bulky and kept outdoors on large lots.  Each piece of equipment is to have identification numbers painted on it but if the equipment is stored high up, or is itself tall, the numbers are difficult to read.  Further, because the equipment is kept outside, it is subject to rust and deterioration.  It appears that the equipment has no real value until it is in demand.  Once the equipment is needed, its value goes up and as that happens, more care is taken with it.  Testimony of Kim Rexroad.

24.  The court finds that Debtor did not conspire with Rexroad nor enter into any scheme to defraud Rex-Tech.  Plaintiff

argues that the actions of Rexroad are attributable to Debtor, and that a debt which arises from the fraud of an innocent partners' associate can be attributed to the innocent partner. However, the imputation of that fraud is dependent upon whether the fraudulent representations were made by a formal partner or agent. Whether the relationship between those parties is considered to be a partnership is analyzed under state law. *See In re Winkler*, 239 F.3d 746 (5th Cir. 2001) and *In re Quinlivan*, 434 F.3d 314 (5th Cir 2005).

25. A partnership is an association of two or more persons to carry on a business for profit as owners. Texas Revised Uniform Partnership Act, Tex. Rev. Civ. Stat. Ann. art. 6132b-2.02(a)(Vernon Supp. 2001). An association or entity created under a law other than subsection (a) of the Texas Revised Uniform Partnership Act is not a partnership. Tex. Rev. Civ. Stat. Ann. art. 6132b-2.02(b)(Vernon Supp. 2001).

26. Although a partnership may be formed by the conduct of putative partners under Texas law, certain factors must exist. These include intent to be partners, receipt of a share of the profits, participation or right to participate in control of the business, sharing or agreeing to share losses of the business or liability for claims by third parties against the business beyond investment interest, and contributing or agreeing to contribute money or property to the business. Texas Revised Uniform

Partnership Act, Tex. Rev. Civ. Stat. Ann. art. 6132b-2.02(a) and 2.03 (Vernon Supp. 2001).

27. Rex-Tech was a limited liability company organized under the Texas Limited Liability Company Act. Vernon's Ann.Civ.St. art. 1528n, art. 4.03 A, provides that a member or manager of a limited liability company is not liable for the debts, obligations or liabilities of the limited liability company including under a judgment decree, or order of a court. The court finds that the facts in this case do not establish that Rexroad and Debtor were partners, whether pursuant to a formal partnership agreement or as an implied partnership. Debtor is not liable for the actions of Rexroad.

28. The court finds that Rex-Tech has failed to establish that it has a right to payment from Debtor. Since no right to payment exists, there is no claim and accordingly, Rex-Tech is not a creditor of Debtor. This court can make its own fact findings on this issue even if there is no existing state court judgment establishing the debt. *Luce v. First Equip. Leasing Corp.*, 960 F.2d 1277 (5th Cir. 1992).

29. Alternatively, even in the event that Rex-Tech did have a claim against Debtor, the court finds that Rex-Tech failed to sustain its burden of proof to establish the elements for denial of discharge or dischargeability of a debt pursuant to sections 727 and 523, respectively.

11

30. Rex-Tech's claim under section 523(a)(4) for fraud or defalcation while acting in a fiduciary capacity, or embezzlement fails for lack of proof. For purposes of section 523(a)(4), the definition of "fiduciary" is narrowly construed and the applicable state law that creates a fiduciary relationship must clearly outline the fiduciary duties and identify the trust property. If state law does not clearly and expressly impose trustlike obligations on a party, the court will not assume that such duties exist and will not find that there was a fiduciary relationship. A fiduciary duty in bankruptcy is limited to express or technical trust relationships.

31. In order to prove that Debtor breached a fiduciary duty to Rex-Tech under section 523(a)(4), an express or technical trust must exist. *See In re Bennett*, 989 F.2d 779 (5th Cir. 1993); *In re Tran*, 151 F.3d 339 (5th Cir. 1998). Debtor was an employee of Rex-Tech, not an officer or director. The evidence does not establish that Debtor owed Rex-Tech a fiduciary duty nor that he misappropriated funds belonging to Rex-Tech.

32. "Embezzlement" requires that money or property was misappropriated with fraudulent intent and was used for Debtor's benefit. Although fraudulent intent can be inferred from a debtor's conduct and circumstances, there must at least be a showing of an intent to deceive another person or induce the other

12

to act in reliance on the deception. *See In re Harrell*, 94 B.R. 86 (Bankr. W.D. Tex. 1988) and cases cited therein. The court finds that Rex-Tech failed to prove Debtor had fraudulent intent.

  33. For a debt to be non-dischargeable under section 523(a)(6) for wilful and malicious injury, Rex-Tech must prove that there was actual intent to take an action that results in the intended harm or was substantially certain to cause the injury. *See In re Delaney*, 97 F.3d 800 (5th Cir. 1966). The evidence fails to establish any of these elements.

  34. Rex-Tech contends that Debtor failed to cooperate with the Chapter 7 Trustee. It also alleges that Debtor concealed and failed to turnover all of the records of J-Tech to the Trustee. The Chapter 7 Trustee testified that once the Debtor obtained competent bankruptcy counsel, he cooperated fully. There seems to have been some confusion as to the Debtor's current address sometime after the case was converted to Chapter 7. Prior to retention of Debtor's current counsel, he was represented by another attorney. Debtor testified that once his home was foreclosed upon sometime in the middle of 2004, he advised his former counsel of his change of address. His counsel failed to file a change of address notice with the court. As a result, Debtor did not receive the initial letter request for information from the Trustee. Debtor testified that once he was aware of the Chapter 7 Trustee's requests, he turned over the business records

13

and assets of J-Tech.

35. Taking into account the fact that Debtor has little formal education, lacks sophistication as to business matters, and has had no financial or accounting training to assist him in operating and in maintaining records for his own business, the court finds that Debtor made a good faith effort to and did provide to the Trustee what business records were available.

## Conclusions of Law

1. The term "creditor" under section 101(10) means an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor."

2. Pursuant to section 101(5) of the Bankruptcy Code, a "claim" means-

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or

> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured.

3. § 523 is governed by a preponderance of the evidence burden of proof. The creditor is required to show that his debt falls within one of the exceptions identified in this section. *Grogan v. Garner*, 498 U.S. 279 (1991).

4. Elements of fraud under 523(a)(2) are stated as: that the debtor made the representation; that at the time he knew

that they were false; that he made them with the intention and purpose of deceiving the creditor; that the creditor relied on such representation; and that the creditor sustained the alleged loss and damage as the proximate result of the representation made. See *In re Houtman*, 568 F.2d 651 (9th Cir. 1978); *In re Miller*, 5 B.R. 424 (Bankr. W.D.La. 1980); *In re Pommerer*, 10 B.R. 935 (Bankr. D.C. Minn. 1981); *In re Smith*, 113 B.R. 297 (N.D.Tex. 1990); *Matter of Church*, 69 B.R. 425 (N.D.Tex. 1987).

5. False representation need not be made in writing. Actual fraud suffices and consists of any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another. Actual fraud is something said, done or omitted with the design of perpetrating what is known to be a cheat or deception. 4 Collier on Bankruptcy ¶ 523.08[1][e] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.). In connection with § 523(a)(2)(A) Rex-Tech has failed to established that Debtor made false representations.

6. Section 523(a)(6) of the Bankruptcy Code states that "[a] discharge under section...of this title does not discharge a debtor from any debt - for willful and malicious injury by the debtor to another entity or to the property of another entity." "Willful" as used in 523(a)(6) means deliberate or intentional; "malicious" means in conscious disregard of one's duties, or without just cause or excuse, and does not require ill will or

15

specific intent to do harm; the "reckless disregard" standard is not sufficient grounds to hold conduct "willful and malicious." *In re Dean*, 79 B.R. 659 (Bankr. N.D. Tex. 1987). 4 Collier on Bankruptcy ¶ 523.16 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.).

    7.   The court concludes that based upon the facts established at trial, Plaintiff has not met its burden of proof in establishing that this debt should be deemed nondischargeable pursuant to § 523(a)(6).

    8.   11 U.S.C. § 727 is the heart of the fresh start provisions of the bankruptcy law. Notes of the Committee on the Judiciary, Senate Report No. 95-989, 95th Cong., 2d Sess. 98-99 (1977), U.S. Code Cong. & Admin. News 1978, p. 5787. The philosophy underlying 11 U.S.C. § 727 is that the bankruptcy discharge to the debtor is a statutory privilege afforded the debtor who meets certain requirements of honesty and good faith in connection with his or her case. *U.S. v. Fraidin*, 63 F.Supp. 271 (D. Md. 1945).

    9.   A Chapter 7 Trustee, a creditor and the United States Trustee are allowed to object to a Chapter 7 discharge. 11 U.S.C. § 727(c)(1). Only those creditors who have claims that will be affected by the discharge can file objections. A discharge would affect the interests of creditors with disputed claims since they have a chance of prevailing on their claims. Once a potential

creditor's claims have been dismissed, a debtor's discharge does not affect the creditor's interests. *See In re Vahlsing*, 829 F.2d 565 (5th Cir. 1987) and cases cited therein. This court has determined that Rex-Tech does not have a claim against Debtor. As such, its objection to discharge and dischargeability of debt is dismissed.

10. The relevant provisions of 11 U.S.C. § 727 specify a denial of discharge to the debtor who has committed certain types of wrongdoing in connection with his bankruptcy case. The provisions of 11 U.S.C. § 727 for denial of discharge are construed liberally in favor of the debtor. *In re Jones*, 490 F.2d 452 (5th Cir.1974).

11. The objecting party has the burden of proof as to sufficient facts which would defeat the debtor's entitlement to discharge. *Hardie v. Swafford Bros. Dry Goods Co.*, 165 F. 588 (5th Cir. 1908).

12. The court has a wide degree of discretion in the application of 11 U.S.C. § 727. *In re Martin*, 698 F.2d 883 (7th Cir. 1983); *In re Lineberry*, 55 B.R. 510 (Bankr. W.D. Ky. 1985). With respect to 11 U.S.C. § 727(a)(2)(A) and (B), there must be actual intent by the debtor to hinder, delay or defraud his or her creditors. *Rader v. Lichtenthal*, 306 F.2d 195 (2nd Cir. 1962); *In re Baughman*, 58 B.R. 967 (Bankr. S.D. Tex. 1986).

13. The adequacy of records is to be determined by the court on a case by case basis. The court considers the debtor's education, occupation, experience and sophistication. It also considers the financial structure of the company and any other circumstances that should be considered in the interests of justice. After taking these factors into consideration, the court finds that Debtor's records are adequate. *In re Womble*, 289 B.R. 836, 856 (N.D. Tex. 2003).

Based upon these findings of fact and conclusions of law, the court renders a Judgment in favor of Debtor and dismisses the complaint. The court will enter a separate Judgment in conjunction with these findings of fact and conclusions of law.

Signed at Houston, Texas this 12th day of April, 2006.

_____
LETITIA Z. CLARK
UNITED STATES BANKRUPTCY JUDGE